IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

FRANK T. WHITEHEAD,

                Plaintiff,                OPINION AND ORDER

v.

                                             20-cv-488-slc

ROSLYN HUNEKE RN-HSU,
L. DOBBERT RN, K. FRISK RN,
B. RINK RN, N. KIAHEULOUHL RN,
and SALLY WEISS, LEGL LOAN DEPARTMENT,

                Defendants.

*Pro se* plaintiff Frank Whitehead, who was previously incarcerated at New Lisbon Correctional Institution (New Lisbon), brings this action under 42 U.S.C. § 1983 against several New Lisbon employees, for their failure to respond properly to his reports of severe knee pain between July and September of 2018. On September 10, 2021, the parties consented to magistrate judge jurisdiction, and this case was assigned to me. (Dkts. 13, 14.) Whitehead's complaint is ready for screening as required by 28 U.S.C. §§ 1915(e)(2), 1915A. Having reviewed Whitehead's allegations, I conclude that Whitehead will need to file an amended complaint that addresses the deficiencies described below if he wants to proceed with this lawsuit.

ALLEGATIONS OF FACT[1]

Frank Whitehead currently is incarcerated at Columbia Correctional Institution

---

[1] In addressing any *pro se* litigant's complaint, the court must read the allegations generously, drawing all reasonable inferences and resolving ambiguities in plaintiff's favor. *Haines v. Kerner*, 404 U.S. 519, 521 (1972).

(Columbia), but his claims in this lawsuit arise from events that took place when he was incarcerated at New Lisbon in 2018. Whitehead names the following defendants, all of whom are or were New Lisbon employees during the relevant time period: Registered Nurses Roslyn, Huneke, L. Dobbert, K. Frisk, B. Rink, and N. Kiaheulouhl, as well as Sally Wess, who appears to work in the legal loan department.

It is unclear when, but at some point after his incarceration began, Whitehead met with a physician, Dr. Hoffman, who informed him that he had "very bad" knees that would cause him a lot of pain. Therefore, Dr. Hoffman prescribed Whitehead pain medication and a knee brace for his left knee, which apparently was in worse condition than his right knee. Whitehead further alleges that he also had undergone surgery on his right thumb, for which he was receiving a different kind of pain medication (naproxen).

On July 29, 2018, Whitehead was placed in restrictive housing, where it appears he was unable to possess his pain medications or his knee brace. Therefore, Whitehead submitted a Health Service Request (HSR) to the Health Services Unit (HSU), asking for his pain medications. Defendant Rink responded that the order was expired, but that he could order the medications from the canteen. On July 31, 2018, Whitehead wrote to HSU a second time, this time asking for his knee brace and again inquiring about his pain medications. On August 1, Whitehead received a response, apparently from defendant Dobbert, who wrote that his brace might be located in the property department and acknowledged Whitehead's arthritis but did not mention his question about pain medication. Whitehead alleges that Dobbert could have arranged to have his knee brace and medications brought to the HSU for him but declined to do so. Whitehead wrote

2

again on August 2, 2018, reporting pain and requesting his medications; defendant Rink responded the next day that Whitehead could order pain medications from canteen and that his knee brace would be replaced.

On August 5, 2018, Dr. Hoffman refilled Whitehead's naproxen prescription. That same day, Whitehead submitted an HSR complaining about his chronic pain from his arthritis in his knees and thumb surgery, and defendant Kiaheulouhl responded that he would be seen that day during sick call. On August 7, 2018, Whitehead submitted another HSR, presumably asking to be seen about his pain, and Dobbert responded by indicating a co-pay would apply but did not address his pain medications. On August 9, 2018, Whitehead submitted a request for muscle rub and pain medications, to which a non-defendant nurse responded, apparently denying him his requests.

Whitehead alleges that for the rest of the month he continued to write to the HSU reporting that he was in the worst pain of his life and could not get out of bed. Nonetheless, Whitehead did not receive his medications or muscle rub. On September 2, 2018, Whitehead wrote to HSU again, and Frisk responded that he would be added to the sick call list. However, Whitehead claims he was not seen, and that Frisk later wrote on subsequent HSR that Whitehead refused to be seen, which Whitehead says is untrue.

On September 9, 2018, Whitehead wrote to HSU again about his pain, and Kiaheulouhl responded that he should request a refill. When Whitehead submitted a request for a refill of muscle rub, his pain medications and his knee brace, he received a response that his request was "forwarded to charge nurse." On September 10, 2018, Whitehead received a memorandum from defendant Huneke, the HSU manager (HSM),

apologizing for the delays associated with his pain medications. Huneke further explained that the prescription had been written incorrectly in his medication sheet, making it appear as though it had expired, which was not Dr. Hoffman's intent.

Whitehead wrote to HSU again on September 11, 2018, and he received a response that his pain medications had been dispensed. Whitehead concedes he received his medications that day.

## OPINION

Plaintiff's complaint does not satisfy the requirements of Federal Rule of Civil Procedure 8. Rule 8 requires "'short and plain statement of the claim' sufficient to notify the defendants of the *allegations* against them and enable them to file an answer." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) (emphasis added). Dismissal is proper "if the complaint fails to set forth 'enough facts to state a claim to relief that is plausible on its face.'" *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 625 (7th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A prison official may violate the Eighth Amendment if the official is "deliberately indifferent" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "Serious medical needs" include (1) conditions that are life-threatening or that carry risk of permanent serious impairment if left untreated, (2) withholding of medical care that results in needless pain and suffering, or (3) conditions that have been "diagnosed by a physician as mandating treatment." *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997). "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable

measures. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).

I accept that Whitehead's pain was sufficiently severe to constitute a serious medical need, but his allegations against Nurses Dobbert, Frisk, Rink and Kiaheulouhl do not support an inference that any of them was deliberately indifferent to his pain. In their capacities as nurses, these defendants were entitled to defer to the medical judgment of Dr. Hoffman in writing Whitehead's prescription, so long as they did not ignore plaintiff's condition. *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1075-76 (7th Cir. 2012) (nurse is entitled to rely on a doctor's instruction unless it's obvious that the doctor's advice will harm the prisoner); *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010) (a nurse's "deference may not be blind or unthinking, particularly if it is apparent that the physician's order will likely harm the patient"). In each of the responses Whitehead outlines in his complaint, the nurses either indicated that Whitehead would be seen for sick call, informed Whitehead that his prescription had expired, or directed Whitehead to purchase pain medications from the canteen. Although Whitehead maintains that the HSU nurses left him without pain relief, he has not alleged that these nurses were aware that Dr. Hoffman had not intended the prescription to lapse, or that Whitehead could not obtain naproxen or other over-the-counter medications from the canteen or his knee brace from the property department.

At most, these nurses' failure to follow up with Dr. Hoffman to determine whether he actually meant for the prescription to expire may suggest that they were mistaken, or possibly breached a duty of care, but inadvertent error, negligence, gross negligence, and ordinary malpractice do not constitute cruel and unusual punishment within the meaning

5

of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996). Therefore, I will not grant Whitehead leave to proceed against defendants Dobbert, Frisk, Rink or Kiaheulouhl, for their handling of his complaints about his medication.

Whitehead further alleges that defendant Dobbert failed to call the property department to retrieve his pain medications and knee brace, but Dobbert's failure to take this additional step does not support an inference of deliberate indifference. Indeed, Whitehead has not alleged that this defendant had any reason to believe that Whitehead could not request his property items on his own. As such, although Dobbert may have had the ability to do more to make sure that Whitehead received those items, it was not a constitutional violation for her to fail to be so proactive.

The same for Frisk's alleged comment that Whitehead refused to be seen during sick call at the beginning of September. Plaintiff's allegations indicate that Frisk added him to the sick call list, and then, days later, responded to an HSR by writing that his records indicated that he refused to be seen. As Whitehead has framed this, it appears that Frisk was simply relaying back to Whitehead information that Frisk had gleaned from Whitehead's medical records. Since Whitehead has not alleged that Frisk outright ignored specific complaints or requests to be seen, her responses do not support an inference of deliberate indifference.

As for HSM Huneke, her involvement here was limited, and it does not support an inference of deliberate indifference. Rather, as alleged by Whitehead, Huneke learned about Whitehead's inability to obtain pain medications on or around September 10, 2018, and it appears that she took prompt action to correct the issue and to apologize to

6

Whitehead for the prescription error. Although Huneke may have acknowledged the mistake, Whitehead's allegations do not suggest that Huneke was aware earlier that Whitehead was not receiving pain medications as Dr. Hoffman had intended and consciously disregarded Whitehead's unaddressed severe pain. Therefore, I will not grant Whitehead leave to proceed against Huneke either.

Finally, I am dismissing the only remaining defendant, Wess, for lack of personal involvement. Because liability under § 1983 is premised on personal involvement, *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996), and the complaint gives Wess no notice of what Whitehead believes he did that violates the law, Whitehead cannot proceed against this defendant. *See* Fed. R. Civ. P. 8(a)(2) (a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief").

Given that Whitehead's allegations do not support a claim against any of the named defendants, I am dismissing this lawsuit. That said, it's possible that Whitehead omitted certain facts about what these defendants actually knew about Dr. Hoffman's prescription, which would change how the court views their alleged failures to act with more urgency when Whitehead complained that he had not received his medications. Therefore, I will dismiss Whitehead's complaint without prejudice, and I will give him a chance to file an amended complaint. If Whitehead wants to take this path, then he should draft his proposed amended complaint as if he is telling a story to someone who knows nothing about his situation, paying particular attention to exactly what he reported to defendants about Dr. Hoffman's prescription, when he said these things, and when and how they responded. Additionally, I note that although Whitehead references certain exhibits to his

7

complaint, he didn't actually file any exhibits. If Whitehead wishes to incorporate his medical records into his amended complaint, then he should either allege details about those records in his amended complaint, or he must file copies of these records as an attachment to his amended complaint. If Whitehead submits a proposed amended complaint by the deadline set forth below, Then I will screen ii under §§ 1915(e)(2), 1915A.

ORDER

IT IS ORDERED that:

1. Plaintiff Frank Whitehead is DENIED leave to proceed on any claims, and his complaint is DISMISSED WITHOUT PREJUDICE.

2. Plaintiff has until October 12, **2021,** to file an amended complaint that states a claim upon which relief can be granted. **Plaintiff's failure to file an amended complaint by that deadline will result in the court dismissing this action with prejudice for failure to prosecute.**

Entered this 20th day of September, 2021.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge